RECEIVED
MAR 28 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 2:15 -CR-00143 |
| v. | JUDGE DREL |
| JOHN STEVEN BLOUNT | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Vacate under 28 U.S.C. § 2255 (Rec. Doc. 26) filed by the petitioner, John Blount, a Response in Opposition (Rec. Doc. 30) filed by the government, and a Reply (Rec. Doc. 32) filed by Blount. For the following reasons, the Petitioner's motion will be **GRANTED.** His sentence will be vacated and reset for sentencing.

### I.   FACTS & PROCEDURAL HISTORY

In 2015, Blount was indicted for wire fraud in violation of 18 U.S.C. § 1343. Between 2007 and 2014, Blount defrauded more than 50 people as part of a Ponzi scheme he orchestrated. From 1992 to 2003, Blount had been a securities broker licensed by the Financial Industry Regulatory Authority (FINRA). However, in 2004, after he made unsuitable annuities and mutual funds sales, FINRA banned him from working in the securities industry and ordered him to pay $1.5 million in restitution and $6 million in interest to ten customers. In 2014, FINRA notified the Louisiana Office of Financial Institutions (OFI) it had received an anonymous tip that Blount was selling securities in violation of the FINRA order. An investigation revealed that Blount had orchestrated a Ponzi scheme in which he had fraudulently represented that he was an investment broker, and that investors could earn high rates of return by investing their money with him. Blount had received almost $5.5 million to invest from more than 50 investors.

1

More than half of Blount's victims were over the age of 60. Most of his victims had known little or nothing about investments, and had relied solely on Blount's purported skills in making the investment. For many of the victims, he had had a long-term relationship with them and their family, and he had used his position of trust to encourage them to invest with him. He also had used his position as a volunteer coach for Moss Bluff Buddy Ball program for disabled children to gain his victims' trust. At least 25 of the victims had invested their life savings, including their retirement funds, with Blount.

Blount had provided his victims with false account balance information which had misled his investors into believing that their money had been properly invested and was earning a profit. However, instead of investing the money, he had used it to pay fake interest payments, to give to non-investor individuals, to pay bank loans and credit card bills, to pay business expenses and income taxes, to make charitable contributions, and to pay personal attorney's fees.

Blount pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 and was sentenced to 235 months. His presentence report (PSR) calculated his total offense level as 36 with criminal history score of I. The following is the United States Sentencing Guidelines (Guidelines) calculation that was adopted by the court:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1) | 7 |
| Specific Offense Characteristics—Loss of more than $2,500,000 (USSG § 2B1.1(b)(1)(J)) | +18 |
| Specific Offense Characteristics—Offense involving 50 or more victims (USSG § 2B1.1(b)(2)(B)) | +4 |
| Specific Offense Characteristics—Offense involved a violation of previous order (USSG § 2B1.1(b)(9)(C)) | +2 |
| Specific Offense Characteristics—Offense involved violation of securities law by a securities advisor (USSG § 2B1.1(b)(19)(A)) | +4 |

| | |
|---|---|
| Victim Related Adjustment—the defendant knew or should have known that the victim was a vulnerable victim (USSG § 3A1.1(b)(1)) | +2 |
| Adjustment for Role in the Offense—the defendant abused a position of trust or used a special skill (USSG § 3B1.3) | +2 |
| Acceptance of Responsibility (USSG § 3E1.1(a), (b)) | -3 |
| **Total Offense Level** | **36** |

Based on these calculations, the Guidelines range for his sentence is 188 to 235 months. During the sentencing hearing, the court heard nine victim impact statements. Those victims explained how Blount gained their trust, manipulated them, and drained them of their retirement funds and savings. After hearing from the defendant, the defendant's witnesses, and the victims, the court stated:

> There's not much I can say that hasn't already been said, but it's amazing how one man could devastate so many lives. And the word rape was well-spoken because that's what you did. You ruined these people's lives. And if you didn't totally ruin them, you almost ruined them. And for that you must pay the piper.[1]

The court then imposed the maximum Guidelines sentence, and concluded the proceedings by stating, "For all of you out in the audience, I'm so sorry for what you had to go through. In case you didn't know, that was the maximum sentence."[2]

The defendant now points out, and the government agrees, that the Guidelines calculation was incorrect. The defendant should not have received a two point increase for abusing a position of trust under USSG § 3B1.3 because Application Note 15(C) to USSG § 2B1.1 specifically states that if subsection § 2B1.1(b)(19) applies, section 3B1.3 does not apply.

---

[1] Transcript (Rec. Doc. 17), pp. 51-52.
[2] Transcript (Rec. Doc. 17), p. 55.

3

Therefore, the correct offense level should have been 34, resulting in a Guidelines range of 151 to 188 months.

In his current Motion to Vacate under 28 U.S.C. § 2255, Blount argues that his attorney was ineffective for not objecting to the miscalculated Guidelines range during sentencing, and for not directly appealing the mistake. The government argues that any errors in the Guidelines range and failure of the defendant's attorney to object or appeal were harmless, because the court would have made an upward departure and imposed the same sentence because of the severity of the crime. How the government knows that is baffling.

## II. LAW & ANALYSIS

### A. Ineffective Assistance of Counsel

In a § 2255 petition, the court determines whether a conviction and/or sentence was obtained in violation of federal laws or the United States Constitution.[3] Blount asserts that his Sixth Amendment rights were violated because his counsel was ineffective during sentencing. The standard of review set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that his counsel's deficient performance prejudiced him. *Id.* at 687.

#### 1. Counsel's Performance

The petitioner argues that his attorney's performance fell below an objective standard of reasonableness because the attorney failed to object to the application of both § 2B1.1 and § 3B1.3 and the attorney did not file an appeal based on the misapplied guideline. The prosecution

---

[3] Even though the petitioner did not raise his claims on direct appeal, ineffective assistance of counsel claims generally cannot be raised on direct appeal and therefore, he is not procedurally barred from making an ineffective assistance of counsel claim. *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

agrees that these failures fell below an objective standard of reasonableness.[4] The court also agrees that by failing to object in the district court and in failing to appeal the misapplied Guidelines, the defense counsel's performance fell below an objective standard of reasonableness. *See Potts v. United States*, 566 F. Supp. 2d 525, 541 (N.D. Tex. 2008) (finding counsel's performance deficient for not objecting to an error in Guidelines calculation).

### 2. Prejudice

Blount argues that if his attorney had objected to the improperly calculated Guidelines range or had filed an appeal based on the improperly calculated Guidelines range, there is a reasonable probability that the objection and/or appeal would have been successful and Blount would have received a shorter sentence. To bring a successful ineffective assistance of counsel claim, Blount must establish that there is a reasonable probability that the outcome would have been different if his attorney's performance had not fallen below an objective standard of reasonableness. *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004). "A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in the outcome. When a claim of ineffective assistance of counsel is premised on counsel's failure to … appeal, the prejudice prong first requires a showing that [this Court] would have afforded relief on appeal." *Id.* (internal quotations and citations omitted). Therefore, Blount must show that there is a reasonable probability that his attorney's objection and/or appeal would have been successful, and that the successful objection and/or appeal would have shortened his sentence.

---

[4] *See* Government's Response (Rec. Doc. 30), p. 13.

i. *Reasonable Probability That the Objection/Appeal Would Have Been Successful*

If Blount's attorney had objected to the application of § 3B1.3, his objection likely would have been successful based on a plain reading of the Guidelines and relevant Application Note. Section 3B1.3 should not be applied when § 2B1.1 applies,[5] and here, both sections were applied when calculating Blount's Guidelines range, resulting in an incorrect total offense level and Guidelines range. Therefore, there is a reasonable probability that the objection would have been successful.

Blount's attorney also had a reasonable probability of being successful on appeal if he had raised the miscalculated Guidelines range. On appeal, the Guidelines error would have been reviewed by the appellate court for plain error. *United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016). To show plain error, Blount would have needed to show that the error was clear or obvious, and that it affected his substantive rights. *Id.* at 534. Then, in its discretion, the appellate court would have corrected the error if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Here, the error was plain and obvious because the application notes for the Guidelines specifically instructed the court not to apply both § 2B1.1 and § 3B1.3. *See* USSG § 2B1.1, Application Note 15(C). The error affected his substantive rights, as explained in more detail below, because the error impacted the outcome of his sentencing. *See United States v. John*, 597 F.3d 263, 284 (5th Cir. 2010). Additionally, Guidelines errors that impact the Guidelines range for sentencing generally are significant procedural errors that are reversed under plain error

---

[5] *See* USSG § 2B1.1, Application Note 15(C).

review. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Accordingly, an appeal based on the Guidelines error had a reasonable probability of success.

   ii. *Prejudicial Effect of Miscalculated Guidelines Range*

  Blount must also show that there is a reasonable probability that if his attorney had successfully objected or appealed he would have received less actual jail time. *See United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). This is because although the district court has discretion to depart from the Guidelines, it "must consult [the] Guidelines and take them into account when sentencing." *Id.* at 1342 (citing *United States v. Booker*, 543 U.S. 220, 264 (2005)). The district court "must begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 1345 (quoting *Peugh v. United States,* 133 S. Ct. 2072, 2083 (2013)). Because the Guidelines act as a "lodestar" during the sentencing process, an incorrectly calculated Guidelines range usually is sufficient to show prejudice, i.e. a reasonable probability of a different outcome. *Id.* at 1346.

  However, if the district court clearly explains in detail that it believed "the sentence that it chose was appropriate irrespective of the Guidelines range," the defendant would not be prejudiced by the application of an incorrect Guidelines range. *Id.* at 1346; *see also United States v. Hernandez*, 690 F.3d 613, 621 (5th Cir. 2012) (finding that the defendant was prejudiced when his sentence was imposed under miscalculated Guidelines because the district court merely adopted the PSR and found no reason to depart from the Guidelines range). "Where, however, the record is silent as to what the district court might have done had it considered the correct

Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez*, 136 S. Ct. at 1347.

As a result of his attorney's mistake, the court used the incorrect Guidelines range. Therefore, unless the record shows that the petitioner would have received the same sentence irrespective of the error, the petitioner has satisfied the prejudice prong of the *Strickland* test. The government argues that the record adequately shows that the court would have imposed an upwardly departed sentence of 235 months under the correctly calculated range of 151 to 188 months. However, the record does not indicate that the sentence was imposed independent of the Guidelines. Rather, during the sentencing, the court specifically said that it imposed the maximum sentence and that it considered the Sentencing Guidelines.[6] The court noted the seriousness of the petitioner's conduct, but it did not make any statement indicating that an upward departure would have been considered in a lower Guidelines range. The record does not show that Blount's sentence would have been imposed regardless of the Guidelines range. Because of this, Blount has shown that he was prejudiced by his attorney's not objecting to or appealing from an incorrectly calculated Guidelines range.

---

[6] Sentencing Transcript (Rec. Doc. 20), pp. 52-53. The sentence imposed was the maximum sentence in the miscalculated Guidelines range. It was not the statutory maximum sentence. *See* 18 U.S.C. § 1343 (limiting a maximum sentence to 20 years or 240 months).

### III.    CONCLUSION

Because Blount received ineffective assistance of counsel during sentencing in violation of his Sixth Amendment rights, his § 2255 petition will be **GRANTED**. His sentence will be vacated, and the court will resentence him on a date to be determined.

Alexandria, Louisiana, this 28th day of March, 2017.

                                                DEE D. DRELL, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT